Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas
### Houston Division

United States Courts
Southern District of Texas
**F I L E D**

**AUG 1 7 2021**

Nathan Ochsner, Clerk of Court

|  |  |
|---|---|
| Rochelle Johnson | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| **-v-** | ) |
|  | ) |
|  | ) |
| Johnson Controls Fire Protection LP | ) |
| _____ | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued.  If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | ) |

Case No. _____

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*  ☒ Yes  ☐ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.  The Parties to This Complaint

#### A.  The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Rochelle D Johnson |
| Street Address | 6727 Camden Valley Ct |
| City and County | Houston  and Harris County |
| State and Zip Code | Texas 77084 |
| Telephone Number | 832-279-2284 |
| E-mail Address | rdjw2013@yahoo.com |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**B.**     **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Johnson Controls |
| Job or Title *(if known)* | |
| Street Address | 5757 N Green Bay Avenue |
| City and County | Milwaukee |
| State and Zip Code | Wisconsin |
| Telephone Number | 414-259-2800 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Telephone Number _____

E-mail Address *(if known)* _____

## C.      Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Johnson Controls Fire Protection LP |
| Street Address | 8323 N Eldridge Pkwy |
| City and County | Houston and Harris County |
| State and Zip Code | Texas 77041 |
| Telephone Number | 281-671-3300 |

## II.      Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒      Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐      Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐      Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐      Other federal law *(specify the federal law)*:

☐      Relevant state law *(specify, if known)*: _____

☐      Relevant city or county law *(specify, if known)*: _____

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

---

## III.     Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.     The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐     Failure to hire me.

☒     Termination of my employment.

☒     Failure to promote me.

☒     Failure to accommodate my disability.

☒     Unequal terms and conditions of my employment.

☒     Retaliation.

☐     Other acts *(specify)*: _____

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.     It is my best recollection that the alleged discriminatory acts occurred on date(s)

It is my best recollection that the alleged discriminatory acts occoured through 2016-2020 time period

C.     I believe that defendant(s) *(check one)*:

☐     is/are still committing these acts against me.

☒     is/are not still committing these acts against me.

D.     Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒     race _____

☒     color _____

☒     gender/sex _____

☐     religion _____

☐     national origin _____

☒     age *(year of birth)*     07-23-1965     *(only when asserting a claim of age discrimination.)*

☒     disability or perceived disability *(specify disability)*

High blood pressure- Diabetes _____

E.     The facts of my case are as follows.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Rochelle Johnson experienced severe emotional distress due to discrimination, retaliation and bullying while working in a hostile environment at Johnson Controls. This has caused an overwhelming amount of mental and physical distress. Due to the significant amount of emotional and psychological long-term mistreatment Mrs. Johnson experienced loss of appetite, difficulty sleeping at night and major hair loss to becoming completely bald in the center of her head.  These emotional, physical,  and mental distresses caused sudden weight loss, strained relationships with family and friends, along with the loss of vitality and ability to enjoy life.

After a medical evaluation, the doctor concluded that her blood pressure had elevated to an alarming level an granted her three months leave of absence, that would run from January 2020, to April 2020. She was referred to a professional psychiatrist for therapy and prescribed medication to help with the depression.  As a result of her trauma, she lived through a total of four years of mental anguish.

In conjunction with the emotional and physical stress, Mrs. Johnson began experiencing financial pressures. She loss 40% of her income during the leave of absence as well as, her severance once being laid off. The lack of finances shut down her ability to support her family, which includes 5 children. Unfortunately for Mrs. Johnson, the impact of what she lived through emotionally and physically may never be restored. therefore, we impress upon the courts to return a favorable answer to Mrs. Johnson's request for compensation. She is requesting to recover a financial claim for both time loss and for the pain and suffering she endured.


ATTACHED YOU WILL FIND:

. EXHIBIT A The original concern complaint letters from 2016-2020
. EXHIBIT B Doctor's report, Excused Absence Note and Psychiatrist letter
. EXHIBIT C Charge of Disc., Amended Charge and Notice of Right to Sue from EEOC
. EXHIBIT D Witness letter from Elizabeth Boswell
. EXHIBIT E Time Frame of Retaliation
. EXHIBIT F The Agreement to Mediate request
. EXHIBIT G Correspondence from Johnson Controls and Negotiated settlement agreement
. EXHIBIT H Hair loss pictures
. EXHIBIT I Established Patterns for Discrimination


*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

9-17-2021

B.      The Equal Employment Opportunity Commission *(check one)*:

☒         has not issued a Notice of Right to Sue letter.

☒        issued a Notice of Right to Sue letter, which I received on *(date)*   5/21/2021                .

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.        Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☒        60 days or more have elapsed.
☐        less than 60 days have elapsed.

## V.        Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

$150,000.00.  For four consecutive years (2016-2020) of  Mental, Emotional and Physical Anguish.
$20,500.00     Severance Package never recevied during Covid -19 lay offs
$1,500.00       For end of year bonus that was sabotage
$5,532.00       40% income loss wages while on sick leave

$177,532.00 Total Claim

## VI.        Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.        For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        8/17/2021

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Signature of Plaintiff        _Rochelle D Johnson_

Printed Name of Plaintiff     Rochelle D Johnson

**B.**    **For Attorneys**

Date of signing:              _____

Signature of Attorney         _____

Printed Name of Attorney      _____

Bar Number                    _____

Name of Law Firm              _____

Street Address                _____

State and Zip Code            _____

Telephone Number              _____

E-mail Address                _____

Established pattern for Discrimination

These three comments were etched in stone the threatens, Bullying and Harassment. Were the work tactics that became an established pattern that took a toll on my mental state of mind, along with benign scared, frightened and nervous to make any type of mistake that keep me on edge at all time.    Every time we had an AR, customer meeting or One on One, threatening remarks would be made, **"heads are going to fly", "don't let me talk to J Gorak about this",** and last but not least and the most important one **"If this is not fixed somebody is going to lose their job I just saying!  Always embarrassing me in front of my co-works - Sit down you're not going nowhere - Now you can Go! Constantly saying Did you get this done! So and So emailed you did you get done. Did you get this done back-to-back oh yeah can you fix this for me! Did you fix the TSU contract? Will you fix this account I drop the ball I need your help right now?**


**I had to work overtime hours without payment I was threaten to get my work done at any cost "I do care how you get it done just get it done"! per HR dept at the Houston Loc - Angie Ready and my manger Valerie Lira   I was advised no OT but my co- worker was getting paid for OT**

Dear human resource specialist,

I Rochelle Johnson employee number 513807, am writing this letter of grievance in effort to make you aware of my feelings toward the harassing innuendos, the constant bullying, racially implied undertones, and the blatant disrespect that I have endured for quite some time.

This specific issue has plagued me since the first week in June. My co-worker Heather was standing at my cubical asking me a job related question. During our interaction, Valerie walked up and Heather asked her what she was doing in the office today? Valerie in turn stated "I'm a slave driver and I'm cracking the whip today" as she proceeded to taunt me and only me with a series of questions. Rochelle, what did you get done today! Did you do this! Did you finish that! Etc. The fact that all of her directives and sharp words were directed at me, made me feel paralyzed for the moment as I sat in silence thinking, Wow! That is quite the racist remark. I cannot believe I am being subject to this type of harassment and undertone in 2017. While Valerie and Heather were still in my presence, I fought to hold back the tears from anger and embarrassment. Once they left my direct area, I immediately called and spoke to Elizabeth Boswell (my former manager) about the entire situation from start to finish. She exclaimed that she would be taking care of it, and would be notifying Jason.

It was apparent that she was true to her word and a conversation had taken place because moving forward, I received nothing but snide remarks, harassing innuendos, and continuous disrespectful tones from Valerie. It is as if she was retaliating because I took the proper channels and escalated the situation to upper management. The retaliations grew stronger and stronger as Valerie was seemingly combative with me. She insisted that my work was incorrect, and challenged every conversation that the two of us had. On one hand she urged me to use unhealthy practices to resolve customer disputes in collaboration with the service team. She stated she did not care what it took, just get the disputes resolved. She said I could sit with them, stand on my head, whatever! Just get the disputes resolved! Then she would tell Elizabeth that I was not conscious of my time and I was taking too long trying to resolve customer disputes with the service team, as I was doing what she asked by sitting with them to help expedite the disputes and come to a resolve.

Another specific incident that occurred was on Friday September 7, 2018. An email was sent to me asking if I had resolved an issue with TSU. I reminded her that per our conversation in July she stated that she would absorb the account. I have the proper documentation to support my claim, as the spreadsheet identifies Valerie as the owner. She never took the time to apologize or offer any type of console for her abrupt behavior. Another situation which parallels this one is when we were working on the St. Luke's account. She told me to go ahead and apply the money and if anyone questions why the money was applied we could ask for forgiveness later. My issue is, when later presents itself, I am the one left holding the bag. It seems as though Valerie gets amnesia in these instances. It is situations like these which made me feel uncomfortable as it is my name that is on the specified account(s), and when heads are rolling, mine is the first one on the chopping block for doing what I have been told to do.

Valerie would ask me to print copies for our meetings. One for the customer, and a hard copy for me to keep at my desk to refer to should the customer call back. I then hear from Jessica that changes are going to be made. One of the things she sated was limiting the number of copies being made due to the excessive use of the printer. It appears that the things that I am being asked to do by Valerie are being repeated to Jessica in a twisted manner when once again, I am only following the directives given.

I have made several suggestions for the AR side in effort to improve faster processes in which to resolve the accounts. One of which was having a dedicated person apply the cash to accounts as I know it has worked in the past. She suggested that I don't worry about it, and just focus on what I am told to do. The light bulb finally went on for me. She is the lead and I am to be seen and not heard. I am only to follow what she tells me to do. My suggestions were not once taken into consideration, rather they were dismissed and overlooked. Ironically my co-worker Heather made some of the exact suggestions and was praised for her input. I reminded Valerie that I had previously made those same suggestions only to be ignored.

Exhibit A 

## Status

• **Convergent on behalf of Reporting Party**
08:23 pm 1/30/2020

I would like to know the status of the case because I have not received any contact from the person in charge of my case.  I would like for someone to follow up with me through this line of communication to let me know if this is still an ongoing investigation.  Because of my new reporting, no one has said anything.  I have a witness that was named and she has not been contacted yet.  After reviewing online and through verbal contact with the ethics line it seems that the ball has been dropped.



More recently, when I returned to work on Wednesday August 28, 2018 after being on vacation, I was made to feel that I was not deserving of my time off. I was addressed rather harshly in the presence of my coworkers about assignments that had not been fulfilled while I was off. I, like everyone else earned my vacation. I was not being paid to work from home. I secured my vacation in advance, it was granted, and I used my time off as I seen fit. On three separate occasions, once being in person, once via email, and once via the telephone, I was told to make sure my work was completed prior to taking my time off. I followed the instruction that was given to me. I did not expect nor did I appreciate coming back to work being presented and inadvertently blamed for instances that manifested while I was not present. If an issue that was directly related to my job description was in question, the appropriate thing to do would be to pull me aside and speak to me in a professional tone.

I am quite receptive to coaching and critiques as I have been with this company for eighteen years and have had eleven different managers and each of them wanted things done in their specific way. I have no problem embracing change, and I am the epitome of a team player, however there is a respectful way in which to address the situation. This particular incident is not the first time in which I have been embarrassed by management in front of others in the office. Also, it seems that in most meetings I am the target of several work related conversations. I am constantly being pulled in every direction.

I have been harassed about everything from time management (even though Valerie insist on telling me personal stories about her pigs and other non-work related things) to being treated unfairly when personal issues out of my control arise. I use my time wisely. I am rarely away from my desk. I work every account with professionalism in order for our clients to respond in a prompt manner with their payments. My goal is to satisfy the accounts accordingly in effort to continuously generate financial resolve for Tyco. In the interim, I am being questioned, redirected, and made to feel inadequate about everything I attempt to do.

The amount of mental anguish that I am enduring as a direct result of this unfair treatment is unacceptable. These situations have caused me an immense amount of emotional stress, strain, and torment. These extreme circumstances have led to some serious health concerns on my end. I am suffering from panic attacks, depression, withdrawn behavior, and elevated blood pressure. In addition I am sleep deprived and restless as I lie awake looking for ways to gain acceptance in my field of expertise. I battle with the fear not being good enough in my role, yet I know I am well capable of performing my job requirements because I have not received any disciplinary actions in my eighteen years of employment.

I have given selflessly and tirelessly of my time during some of the most tragic instances in my life. I endured the loss of my mother while being employed here, as well as the near death of my son. Through everything, I have always kept my commitment to excellence. I am asking that the cultural, ethical, and moral standards that this company has in place be honored. I have the right to work in a cohesive environment where my strengths are acknowledged and my areas which need improvement are developed. I have the right to be heard when I am expressing positive attributes about my role in the company and when I am expressing disapproval of unfair treatment, harassment, racially motivated stresses, and bullying, without being subject to retaliation.

Our diversities make us all unique and should be welcomed and understood instead of being used to create separatism and tension. I take these issues very seriously. I am speaking up once again because silence is a form of acceptance.

I am looking for a fair resolve of this situation,

Rochelle Johnson
513807

Exhibit A

(1)

Johnson Control core value

Integrity

Excellent

Accountably

Team work

The above core values were implemented into the company's policies and procedures as a guideline for the company and its employees to succeed. However, in my situation the core values were not considered, rather they were ignored as it relates to the ongoing bullying, retaliation, harassment, and discrimination based on age and disability.

As a dedicated employee with twenty years of experience and valuable work history I have been rewarded, recognized, esteemed and compensated for my hard work.  In my position I was the only administrator that had to endure several changes in management. These ongoing changes made it difficult to maintain a specifically consistent set of job-related rules and regulations which in turn resulted in lack of expert performance. More often than not I endured the arduous task of seeking resolve from upper management so that I would be able to efficiently complete my daily task. Unfortunately, each one of my assigned managers were not in consistent agreement. My job-related tasks, as well as assignments would vary in directive which adversely effected the outcome of my role. During this time of overwhelming pressure and stress, I have counted at least seventeen persons that I have had to take directives from to include interim team leads, and supervisors. I was responsible for adapting and complying during the inconsistent behavior as well as the broken policies and procedures. I was expected to change and accept each new manager's style of operations all while keeping a posture of excellence.

In reading the policy as it relates to harassment, Johnson Controls and its affiliated entities states it will not permit workplace harassment in any of their facilities. In short, the policy includes and defines the meaning of age based, and race-based biases. Further, it speaks to harassment being any type of verbal abuse such as the use of malicious derogatory remarks, insults, epithets, threatening, intimidating, humiliating or intentional sabotage and undermining of a person as it relates to work performance, yet I have been subject to the very unacceptable, harassing, discriminate practices that Johnson Controls policy speaks so vehemently against.

I used the proper procedural guideline and followed the established protocol to report the personal degradation's that I have suffered. In my original statement of complaint, I explained how I spoke to Elizabeth Boswell (as I do not believe that Jessica Williams was officially my manager). I called Elizabeth Boswell very shook by the offensively insensitive comment that came from Ms. Liras mouth. At the end of the day, I am a human being. The foul and detestable comment that Ms. Lira directed to me was not only uncalled for, it was unprofessional and dehumanizing.

On June 19, 2020 when Ms. Lira called me into the conference room to advise me that I was being laid off. She immediately stated that my lay off had nothing to do with my work performance rather it was due to the fact that COVID-19 -19 had affected the company financially. (see attached paper work from JCI) However, in the response, JCI made mention of my work performance.  I am completely discontented as JCI has subscribed to two totally different reasons in regard to my involuntary lay off.

Please see the enormous work load and responsibilities listed below that I had to handle versus the other two Fire Cash Specialists, Heather Hedglin and D'Shai Blackmon.

My ever-changing, compounding, work responsibilities super exceeded that of the other cash specialist, Heather Hedglin.  Heathers workload was limited to the Shell and Exxon Mobile accounts. In addition, she was to take notes for the AR penalty file.

New hire, D'Shai Blackmon (who began employment sometime during the fourth quarter of 2019) did not have a defined workload. On several occasions her and I worked closely together as I was training her on the accounts in which I was responsible for. This was just another added responsibility to my already stretched work load. It was quite overwhelming for me to help train a new hire especially when a qualified candidate (Catherine Gregg), interviewed for the role that Ms. Blackmon was afforded. I'm not for sure why Ms. Lira did not hire or give this opportunity to Catherine Gregg when she applied for the position. Catherine was very familiar with JCI's customers' base. In addition, she understood the PMA contracts and the dispute system. Catherine has been with the company for well over ten years. Catherine (a qualified Caucasian female), was not afforded the opportunity rather it was given to a black underqualified female who was to assume my position while my termination was being processed. Interesting. In my humble opinion, this is JCI's "last ditch" attempt to combat the racially driven portion of my grievance.

This is a list of my workload compared to my above-mentioned colleagues. These are all of the daily responsibilities attached to my job prior to my leave.

    Weekly dispute meetings

    All construction project credits

    All service invoice credits

    Lien waivers

    Notarized invoices for Project team or anyone in the office.

    District control accounts

    MD Anderson. I had to fix incorrect P.O. numbers and send invoices with back up and adding notes to each invoice.

Exhibit A

Memorial Hermann Hospital

Metro

University of Texas

HCC

TSU

Harris Heath System

Piper Electric

Texas fire and Safety

I was assigned to help with accounts on the AR penalty file.

Tons of emails.

COD calls

Tons of meeting

LMS training class

Front desk duties

Safety meetings

Mail

Checks and FedEx

Send invoices with back up for my DC accounts.

UT meeting

TSU meeting

HCC meeting

Metro meeting

MD Anderson meeting

Collector Call

One on One meetings



In June of 2018, I filed a grievance against Valerie Lira who at the time was not in a supervisory position. Valerie made a generalized discriminatory racially charged remark. One of my co-workers greeted her and asked her what she was doing in the office. Valerie stated "I'm a slave driver and I'm cracking the whip!" She immediately directed the remainder of her insulting comment directly to me. She went on to say, "Rochelle, what did you get done today!" (Please see attached letter that was submitted to the HR Department in 2018). After filing said grievance, I have encountered an overwhelming amount of verbal mental, and discriminatory backslash. As a result, I am suffering from mental as well as emotional stress related issues. These stressors have in turn affected my physical health.

Aside from the egregious weight of being belittled in private as well as in front of my coworkers, I have been tasked with an excessive amount of work related "new" assignments and protocols that otherwise would not be my responsibility. This form of retaliation is inexcusable. It goes against all moral and ethical principles and practices established in the written code of conduct which Johnson Controls' has outlined in accordance with the United States of America's labor law. I took my time and went through the proper channels of escalation in regard to my situation and I was not offered a resolve within a timely manner. Instead of the insults and antagonizing tactics decreasing, they grew faster than I could process them.

The unlawful sequence of events has struck a chord down on the inside. The use of hateful words and demeaning mannerism has brought tears to my eyes. I am completely outraged and embarrassed to know that this form of abuse was being minimized in 2018 and is ongoing to this day. The fact that I have been subject to racist comments in the workplace is shameful and despicable. What's more disheartening is the fact that these comments and controlling devices came from the mouth of my now manager. Valerie, who is supposed to be a source of support and an example of model behavior in the workplace has been offensive, unrelatable, and uncompromising. I am vehemently outraged at the fact that no one seems to be concerned.

My personal encounter with her racially charged comment immediately reminded me of the incident that took place in 2017. We were on a company-wide conference call. The caller was heard asking this question. "What about the niggers." The moderator asked, "what did you say sir?" The caller repeated the same question. "What about the niggers?" The caller then proceeded to ask, "what are we going to do with the niggers?" All of our Caucasian co-workers turned and looked at the six African-American employees in the room and proceeded to shake their heads. I can only imagine what was going through their minds, but I can certainly recall my thoughts concerning the incident. I was momentarily stuck. I was paralyzed by the comment. My thoughts went numb as my body followed. I was offended and I was grieved. I was saddened to know that blatant hatred and racism still existed in 2017. Although a company-wide letter of apology followed the incident, that moment will forever be etched in my memory. I had no idea that I would face my own bout of racism in the coming months. Valerie Lira (my now manager), seemed to follow the lead of that caller when she made the comment in 2018, that she is a slave driver and she is cracking the whip.

I have honestly been treated like a slave without the physical lashing. I feel condemned and alone because I spoke up about a legitimate concern. Although Johnson Controls' policy states that there would be zero tolerance for retaliation, I have endured nothing but scolding's and beyond. I had no idea that the policies put in place to protect me would in turn seem inapplicable as it relates to my personal grievance. This entire incident ensued from another employee's wrong actions. Initially, no repercussions were extended therefore indirectly allowing the continued harassment, belittlement, and embarrassment that has been and continues to be afflicted upon me. Valerie Liras disrespectful connotations have seemingly been massaged and condoned by others. Her condescending ways have not only been voiced by myself,

but have been a discussion of others internally (I choose not to mention names), as well as externally. Sadly, I have had to listen to customers make very direct comments in regard to her negative attitude and unpleasant disposition.

To further substantiate my claim and give you an idea of the embarrassment and belittling, I must mention how Valerie Lira attempts to insult my intelligence and my ability to perform my job-related assignments.

I am fully aware that those in position on her team are younger than myself. That is to be expected as I have given Johnson Controls' almost twenty years of valuable service. I did not and do not appreciate being the brunt of negative examples. It is unfair to hyper inflate negative dialogue in which my name is being used constantly. I was and still am made to feel incompetent in comparison to my fellow employees. This type of abuse is unnecessary and weighs on me mentally.

I am not judging the fact that Valerie Lira has established relationships outside of Johnson Controls' with some of her immediate employees. My issue focuses on the favoritism narrative that is prevalent in the workplace. I have been privy to several personal conversations shared across the cubicles that have included stories related to them being in her home for various gatherings. They would begin the conversation(s) in English and then switch to their native tongue which is Spanish. It made for an uncomfortable work environment as it seemed they intentionally masked the content of their dialogue. Not to mention the correction that I would receive if I engaged in conversation with a co-worker longer than what seemed necessary.

Next, I will talk about the unrelenting conversations surrounding Texas Southern University. I was constantly questioned to the point of harassment about Fred Holts whom is the Safety Specialist AHJ of Texas's historically black college, Texas Southern University. The harassing dialogue eluded to leading questions. The questions and comments were posed as if I were "protecting" Fred Holts. Texas Southern University business partnership, like all of Johnson Controls' business affiliates, is very essential. I suppose the reasoning behind the constant questions and commentary is the fact that they are an African-American company. The speculation is that I had built some type of allegiance with Texas Southern University as well as with Fred Holtz himself. To this day I am yet baffled as to why the continuous dialogue seemed to only include me. I have listened to those in position make degrading remarks about Texas Southern University. As one of Johnson Controls' top customers, I am embarrassed and regret hearing and knowing the ugliness that has been spewed by those in position. The conversations surrounding this customer is unsettling and offensive. Valerie Lira personally shared a story about Fred Holt. She stated that someone she knew, stated that Fred Holts was a big liar and a deadbeat. These unprofessional comments and conversations about a black man should not have taken place on company grounds. I was extremely uncomfortable, as I was the only African-American person in my department present.

Although I have given Johnson Controls' twenty dedicated years, I would be remiss if I stated that I have received the same rights, acceptance, and privileges that has been allotted my Caucasian co-workers whom worked on the Fire side with me.

Favoritism continued.

Exh. b) + A
③

One co-worker in particular Heather Hedglin was able to work from 8:00 a.m. until 4:00 p.m. without signing out for her lunch breaks although she indeed went out of the office for lunch. She would verbally state for all to hear, "I'm going out to lunch; anybody want anything?" One day I asked said co-worker how she is able to work from 8:00 a.m. until 4:00 p.m. and still be able to take an hour lunch. Said co-worker denied that she ever takes a lunch. We all know this to be false. Although she is taking her lunch, no documentation was noted on her time card to reflect the deficit. By her own untrue admittance, "she never takes a lunch."

One day I had an important doctor's appointment. I expressed to Valerie that I would have no problem making up any missed time. Valerie stated that I was not allowed to make up any missed hours although that privilege had been extended to the above-mentioned co-worker. The same one that did not have to deduct time for lunch. Again, said co-worker stated that she is allowed to work on the weekends to recoup any missed time she accrued.

Prior to said co-worker's employment, I was responsible for picking up customers checks. Valerie relieved me of that responsibility without warning, upon coming over to help Houston fire in regards to collections. Valarie stated "Rochelle, we don't want you to pick up checks anymore because we want you to stay focused on your work. Heather does not have the enormous workload as you do, plus we need you in the office at all times." Valerie Lira, Jason Gorak, and Jessica Williams really favored Heather.

Another example of favoritism is when I called in because I was ill. Upon returning to work, I was reprimanded because the scheduled dispute meeting did not take place. Again, I called off of work because I was ill. I'm not quite sure where the miscommunication came in but how could I be in two places at once. I was told to never cancel a dispute meeting, per my conversation with Jessica and Valerie. In my defense, I have emails showing that Heather was allowed to cancel her dispute meetings twice with no backlash, repercussion, or discipline.

Johnson Controls' is supposed to be a harassment free workplace. They claim that they do not permit harassment to take place in any of their facilities. If harassment is occurring, we have the right to report it to the appropriate personnel. (Please refer to Johnson Controls' Harassment Free Workplace Policy Statement).

Some of the harassing tactics in which I have been subject to include, harassment-based race, color, age, insults, the show of or hostility toward or makes fun of an individual etc. Also, I am a victim of verbal abuse, such as the use of malicious derogatory remarks, insults, epithets, threatening, intimidating, humiliating and intentional sabotage including undermining of a person in work performance.

Next, I will be listing a summary of some of the personal situations that have transpired over a course of time and continue to affect me.

I dreaded being in the middle of inappropriate conversations about the management team on the Fire side. The conversations I have listened to have sucked the life out of me and have left me feeling uncomfortable. Valerie Lira has shown misappropriated management skills. She has been irresponsible in her position of management as it relates to integrity. She has spoken in a non-integral capacity about Jessica W, Forrest M, Chad S, Martha S, Chad H, as well as Jeremy F. She expressed that they don't know what they're doing, and deemed them lazy and useless.

*Exhibit*
*A*
*(4)*

Before Valerie went out on maternity leave, she was working on the Park Square Condominium account, but never took care of it. She kept expressing that she would fix the account but continued procrastinating. She had several variances as to why she could not collect. She mentioned a tax issue among other things as her reasoning for failing to collect. She verbalized her reasons continuously. That being said, Valerie has failed to hear and understand me when I have experienced similar challenges, and is quick and unrelenting when it comes to calling me as well as others to the carpet. The customer finally satisfied their account but had a remaining balance that Valerie requested that I clean up by writing it off. This is one of several examples of how I have put my existing responsibilities on hold to absorb the work of others. Please pull up all the notes related to the Park Square Condominium account.

In my 2019 performance rating, Jessica Williams's wrote that I needed to be clear and concise in conveying my thoughts. I have a hard time accepting that critique when I am not being heard. How can one be clear and concise when the person writing the performance rating assumes the position that they are right all of the time. I was hushed like a child at every meeting. During meetings with Jessica and Valerie WHEN I was allowed to speak, every word, thought, or idea I tried to express was wrong (in their opinion).

I have been overlooked, shut down, embarrassed, insulted, and torn by negative connotations so long, until my level of stress became toxic. I oftentimes do not know what to do or say. If I said something I was criticized. If I declined to comment I was criticized. I have been placed in a no-win situation.

During one of my performance ratings, I over reached as it relates to my goals. Upon discussion with Jessica Williams's, I reflected on what I had written and wanted to write more achievable and attainable goals. I was not allowed to change my goals or answers to ensure a "meets" status. Heather, on other hand, had specific help from Valerie with her performance goals answers. She was guided as to what she should write and was instructed to add the HCC account to her list as if she contributed to the collection of the funds. HCC was my account. I worked tirelessly with the customer until the payment was collected. The only hand that Heather had in the HCC account was when she attended the meetings on Tuesdays to talk about the HCC spreadsheet. In order to validate what I was hearing I intentionally walked passed Heather's desk only to find Valerie sitting on Heather's desk dangling her legs continuing to coach Heather on what to write. Once Valerie had concluded her coaching session, she instructed Heather to send the document to Jessica and let her know that she was ready for her meeting.

We had the opportunity to receive a raise in 2019. (Please look up that date) The date that the raises posted to our checks, Valerie came by Heather's desk and asked her if she had gotten her raise. Heather replied "yes", in what she thought was a soft voice but I definitely heard the two of them. As Valerie walked back to her desk, she told Heather" I know it is little but it is something." I felt that Valerie's comment was antagonizing. I question why she would even mention that so I could hear, knowing that I didn't get a raise. Why is she continuously taunting me? Also, I am not understanding how HCC was accredited to Heather's performance review as good when it was credited to my performance review as negative.

Speaking of Houston Community College (HCC) One day right before they announced that Valerie Lira was going to become my manager, we had a meeting about HCC. In attendance was Raquel Lassaire, Tomeka Sanders, Valerie Lira and myself, Rochelle Johnson. During a heated conversation between Valerie and one of my co-workers in attendance, Valerie expressed with a loud and stern voice that her words are golden and whatever she says to Jason Gorak he will listen because she has his hear. This is yet another form of favoritism.

I have emails from 2018 and 2019 reaching out to the team for help with HCC. The process that we were using was a bit flawed as too many hands were in the files. The customer became very frustrated due to the inconsistent invoices she was receiving from corporate, the collectors, the ABC team, and myself. Our customer finally shut down and refused to pay until we fixed the issue. Somehow this became my issue and my fault when in reality the failure to collect in a timely manner stemmed from the broken system that was in place, not to mention the email documentation from the customer that stated she would be out of town for three weeks but we could send all correspondence to James Walker and when our customer returned she would  be reviewing the invoices and responding accordingly. This is yet another example of misappropriated blame to discredit my work ethic. No matter the circumstances surrounding the challenges to make collection possible the overarching theme is, Rochelle Johnson is at fault. Incidents like this and the above-mentioned scenarios have played a huge part in me not receiving applicable raises after putting in hours and hours of tumultuous work.

I was sabotaged at the end of the year 2019. I had the opportunity to win a bonus in the amount of $1,500.00 for an invoice that was 365 days past due for Dow Gulf Coast Pipeline. I had no access to the HVAC Ariba system. In one of our AR Penalty meetings Valerie stated that she could help me by accessing the Ariba portal and retrieving the PO number and attaching it to the invoice. The $2,060.00 invoice was processed by Valerie on my behalf in Ariba with the help of a Dow representative, but as fate would have it, when Valerie needed to repeat those same processes in order for me to get credit for the  $12k in which I collected, that needed to post before the end of year, she expressed that she had forgotten how to do it. Unfortunately, her delay caused my credit to be processed after the end of the year and I lost out on receiving the $1,500.00 bonus. Please pull and read all notations about this account. Customer number 00940483.

Unfortunately, I cannot recall the date for the AR penalty meeting in January 2020. What I do recall is, Valerie left early and was not in attendance. When it came to Dow account, I had to provide my verbal update in regard to the past due invoices. I stated that Valerie was working on this account as I did not have access to Aribia. I explained that she volunteered to help. Even after explaining the sequence of events to Jason G, to my surprise, Jason G interrogated me for the next five minutes as to why this account was past due as if I had intentionally not attempted to collect. Finally, Heather jumped in and stated, "I think I remember something like that and I will get with Valerie on this account". I was upset, embarrassed, and overwhelmed. Why should I have had to sit there sweating bullets? He never took my words at face value, but rescinded only when Heather made her statement. Again, this is another example of an embarrassing moment where my voice was not heard. I am overly tired of being mistreated.

When Heather gives her answers and explanations in regard to various accounts and when Valerie gives her answers and explanations in regard to various accounts, their reasons are accepted without challenge. This makes me feel disproportionate and inferior to my fellow coworkers. I am undervalued and underappreciated. Valerie and Heather have not been overlooked when it comes to verbal input, but when it is my turn to speak, I am subject to interrogating practices, bullying, and uncomfortable embarrassment. I am being treated as if I don't know what I am doing. I have been an intricate asset to this department for the last 20 years. I have seen mangers come and go. I have had my responsibilities altered with each new member of management. No matter what directives I have been given, I have followed them like any valuable team player would. I have been silenced. I have been told stay in my place. I have been told not to do this and not to do that. I have been questioned about my job skills and knowledge. I have been pulled, twisted, and turned upside down. But, at the end of the day, I have still been the last woman standing.

There was a time when Valerie and Heather attended customer meetings that were assigned to me. Once said meetings were over, the they almost never provided me with the applicable feedback or updated information that may have been pertinent to the account. I do not recall getting the TSU notes, nor the new process for Memorial Hermann.  I have an email from October 2, 2018 that they had a good meeting and wanted me to set up users for the DCI customer portal.

I was told that when I was out of the office I needed to come up with a plan of action because I was taking seven days off. Per the email from Jessica Williams on October 12, 2018 (who would be covering my work and meetings) I was informed to never ever cancel a DMS meeting and to make sure my "out of office" email was on and set to automatic reply. I completely understand this protocol. This is a good process for the company. My rebuttal is, how come this process did not apply to my co-worker Heather? She was out of the office and I had to forward her some information via email. She did not comply with company protocol as her out of office email was not set to automatic reply.

I was told not to save my vacation until the end of the year. It's not that I was trying to "save" it, rather I needed to use it sparingly. My son, Treveon was diagnosed with lupus of the brain in 2017. Treveon was in a coma for two months but was in the hospital for three months. During this time, I needed to work from home given the touch and go circumstances surrounding my child. I was denied. In turn, my husband missed approximately three months of work to care for our son Treveon. This specific situation broke my heart. How could the company in which I invested so much time, resources, and dedication, turn their back on me when I needed them most. The same thing happened when both of my parents died. I will be more than happy to explain these scenarios in detail and in person as it is an extremely sensitive conversation that evokes deep rooted emotions.

I emailed Jessica Williams on May 28, 2019 at 1:30 pm asking to take off the following day because my daughter was having her baby as it was a scheduled cesarean section. Unfortunately, DSM meetings were scheduled and it was an inconvenient time. Jessica with attitude, condescending tone, and annoyance, expressed that they cannot move the meetings because it is the end of the month. As much as I understand the importance of meetings, I equally understand the importance of supporting my daughter as she endured a high-risk pregnancy.  I'm not understanding why I always get the third degree when I want to take off.

In my almost two decades of service, I have never just called off without reason. Unfortunately, my missed days have generally revolved around the untimely event that one of my five children are sick or an unexpected emergency arises like death. I was painfully grieved when I could not attend my aunt's funeral (which was my mother's sister).  I had used all of my vacation time. I was too afraid to ask Valerie to grant me the time off as I was very vulnerable and could not afford to be mentally and emotionally abused, causing me a major setback.

I have a email from June 3, 2019 highlighting Heather's name, because in May, we beat our cash collection target for the first time since October. The email accredited a lot of this to Heather. It read that she had taken over the portfolio. Unfortunately, that is not true. Heather expressed to me that she never got a report or portfolio to work off of. If by her own admission she had not had a portfolio to work off of, how could this collection be accredited to her?  To uphold the integrity of my complaint, please review the email correspondence. Also, please pull the reports from that month to see exactly how much she collected as I too was working on this report. In essence, this was a team effort and the team should have been acknowledged as a whole.

| 87880 | QW | 1 | Strep Screen |
| 87804 | QW:59 | 1 | Flu test |
| 99050 | | 1 | SERVICES PROVIDED OFFICE OTH/THN REG SCHED HOURS |

Digitally Signed By: Yaa Amoah-Honny, MD

········································································································

## New Patient Encounter
(2019-09-18) Provider: Yaa Amoah-Honny

**Facility:** Cyfair Clinic
**Reason:** Losing hair, stress problems x weeks
**Provider:** Amoah-Honny MD, Yaa
**Procedure:** 99214 45 MINUTES
**Procedure:** 99401 Preventative Counselling adult

## Vitals
(2019-09-18)

**Seated BP:** 149/95  **Weight:** 247.00 lb  **Height:** 66.50 in  **Temperature:** 98.30 F  **Temp Method:** Oral  **Pulse:** 98 per min
**Respiration:** 18 per min  **BMI:** 39 kg/m^2  **BMI Status:** Obesity II  **Arm:** Left

## Progress Note
(2019-09-18)

| Vitals | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| — Vitals — | | | | | | | | |
| Vitals Taken: | | 2019-09-18 15:41:00 | | | | | | |
| Height: | 66.50 | Weight: | 247.00 | BMI: | 39.3 | Obesity II | Pulse: | 98.00 | Resp: | 18.00 | Temp: | 98.30 |
| Seated BP: | 149 / 95 | Prone BP: | / | Standing BP: | / | Arm: | Left | O₂ Sat.: | 0.00 | HgbA1c: | |

| Chief Complaint |
|---|
| **Notes:** |
| Losing hair, stress problems x weeks |

| History of Present Illness |
|---|
| **Notes:** |
| Pt presents to the clinic and notes stress at work, and losing hair. |

| Allergies | | | |
|---|---|---|---|
| Start Date | Title | Reaction | Comments |
| 2019-04-05 | No Known Drug Allergies | * Not Found * | |

**Other Notes:**
NKDA

| Review of Systems |
|---|

The patient reports the current following problems:

**Constitutional:** No Problems Indicated
**Ear/Nose/Throat/Mouth:** No Problems Indicated
**Respiratory:** No Problems Indicated
**Genitourinary:** No Problems Indicated
**Neurologic:** No Problems Indicated
**Endocrine:** No Problems Indicated
**Lymphatic:** No Problems Indicated
**Eyes:** No Problems Indicated
**Cardiovascular:** No Problems Indicated
**Gastrointestinal:** No Problems Indicated
**Musculoskeletal/Extremities:** No Problems Indicated
**Skin/Hair/Nails:** No Problems Indicated
**Psychiatric:** No Problems Indicated
**General Notes:**
  stress at work

| Medical History |
|---|
| **Other Notes:** |
| insomnia |
| depression |
| htn |

Exhibit - B

①

# Excused Absence Note
## Cyfair Clinic
## 16316 FM 529 Rd
## Houston, TX 77095-1464

**Date:** 2020-04-14   **Patient:** Rochelle Johnson   **DOB:** 1965-07-23   **Age:** 56 **Sex:** Female   **ID:** 67959

Please excuse Rochelle Johnson from Work for the following days: 6.

The patient may return to  Work on 2020-04-20.

---

Notes

Patient was seen for an office evaluation. Patient is still in the care of an psychiatrist/psychologist. Patient is released to return to work without restrictions from an primary care physician view point.

---

Signed By  Yaa Amoah-Honny, MD on 2020-04-14

Exhibit B-②

## WILLIE MAE LEWIS, PhD.
### INSTITUTE FOR PSYCHOLOGICAL SERVICES

February 2, 2021

Re: Rochelle Johnson
DOB 09-23-1965

Christina Hernandez
Investigator
Houston District Office
Suite524
1919 Smith Street
Houston, Texas 77002

Dear Investigator Hernandez

This note is written on behalf of our patient Ms. Rochelle Johnson. Ms. Johnson has been active with our office since January 1, 2020 Her last date of treatment was April 14, 2020 due to inability to financially continue due to account balance, with continued treatment recommended.

Intake reason of anxiety and depression related to office stress. The impact on her status is described as intense stress at of impairment in concentration levels and task completions. Reported were moderate level physical symptoms that tend to impact daily functioning.

If additional information is needed please contact me at 281-381-2276

Sincerely,

Willie M. Lewis, Ph.D.
Executive Director

---

**2626 South Loop West –Suite 430, Houston, Texas 77054**
Phone: 281.407.3190 Fax: 281.407.3192
Email: ips.health@sbcglobal.net - www.Psychologicalcaresolutions.com

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 460-2020-04742 |

**TEXAS WORKFORCE COMMISSION CIVIL RIGHTS DIVISION** and EEOC
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **MRS. ROCHELLE D JOHNSON** | **(281) 858-7286** | **1965** |

| Street Address | City, State and ZIP Code |
|---|---|
| **7322 CYPRESS PRAIRIE DRIVE, CYPRESS, TX 77433** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **JOHNSON CONTROLS FIRE PROTECTION LP** | 15 - 100 | **(469) 847-3402** |

| Street Address | City, State and ZIP Code |
|---|---|
| **8323 N ELDRIDGE PKWY SUITE 120, HOUSTON, TX 77041** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE ☒ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **10-14-2019** Latest **06-19-2020**
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I have been with the Company for twenty (20) years and have been performing the same job duties and responsibilities. I had never been verbally counseled or written up until Ms. Valerie Lira became my Manager on or about a year ago. Ms. Lira was my co-worker prior to being promoted. As a co-worker sometime in 2017, Ms. Lira made an offensive racial comment to me Im a slave driver and I crack the whip. I immediately reported the unwelcome comment to no avail. Ms. Lira became my Manager and began to harass and bully me which created a hostile work environment for me because of my race, color and age. On September 2019, I filed a complaint with the 3rd party ombudsman. I reported the racial comments made, the harassment and bulling that I was subjected to by Ms. Lira. On October 2019, I was written up for performance and placed on a PIP. Because of the hostile work environment, I went out on Family Medical Leave. I returned on April 17, 2020 with a Doctor release note. The hostile work environment continued, and I filed my 2nd complaint with the ombudsman and emailed Angela Forte my issues and concerns. On June 19, 2020, I was the only one from Valerie Lira's team that was laid off.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Rochelle Johnson on 09-18-2020 12:28 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 460-2020-04742 |

| TEXAS WORKFORCE COMMISSION CIVIL RIGHTS DIVISION | and EEOC |
|---|---|
| *State or local Agency, if any* | |

**Dshai Blackmon was hired as a Cash Specialist about four months ago and she is still employed. I feel the reason to lay me off is pretext for discrimination.**

**I believe I was discriminated against because of my race, Black, my color and laid off in retaliation for opposing unlawful employment practices in the workplace in violation under Title VII of the Civil Rights Act as amended and my Age (55) in violation under the Age Discrimination in Employment Act.**

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Rochelle Johnson on 09-18-2020 12:28 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

Exhibit C

Ⓑ

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.  FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2.  AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.  PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.  ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.  WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

Exhibit C

④

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Amended Charge:

Charge No.: 460-2020-04742

Rochelle D. Johnson vs. Johnson controls Fire Protection, LP


I wish to amend my complaint to include my disability.  On April 17, 2020, I returned with a doctor's note from approved leave of absence for a medical condition.  Respondent is aware of my disability.  I feel since I complained the first week of June 2020,  about discriminatory practices in the workplace, in retaliation I was laid off.

I wish to include in my original complaint that I believe I was discriminated against because of my disability as defined under the Americans with Disabilities Amendment Act.


_11-10-2020

Date

Rochelle D. Johnson

Rochelle D. Johnson

Exhibit c
①

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Rochelle D. Johnson<br>6727 Camden Valley CT<br>Houston, TX 77084 | From: | Houston District Office<br>Mickey Leland Building<br>1919 Smith Street, 7th Floor<br>Houston, TX 77002 |
| --- | --- | --- | --- |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| **460-2020-04742** | **Vernon M. Gardner, Jr.,**<br>**Investigator** | **(346) 327-7704** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| | |
| --- | --- |
| **[X]** | More than 180 days have passed since the filing of this charge. |
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| **[X]** | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| | |
| --- | --- |
| **[X]** | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost. |
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

VERNON GARDNER
Digitally signed by
VERNON GARDNER
Date: 2021.05.21
15:07:54 -05'00'

For

**Rayford O. Irvin,**
**District Director**

May 21, 2021

*(Date Issued)*

Enclosures(s)

cc:
**Tammara M. Lovett**
**Executive Director,**
**Labor & Employment Law**
**Johnson Controls**
**5757 N Green Bay Avenue**
**Milwaukee, WI 53209**

**TWC- Civil Rights Division**
**101 E. 15th Street, Rm. 144-T**
**Austin, TX 78778-0001**

Exhibit C 

Enclosure with EEOC
Form 161-B (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, *in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed* **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. *You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.* Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10 – not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

To whom It May Concern:

I was contacted by Rochelle Johnson yesterday, January 20, 2021, stating that she needed a written statement from me in regards to situations that occurred during her employment at JCI/SimplexGrinnell in 2016 that I was aware of.  At this time, I was her reporting Area Business Manager.  Rochelle was an Accounts Receivable Administrator in the Houston district.  She had indirect reporting to Jason Gorak (Area Manager) and Jason had Valerie Lira (HVAC /JCI collection Administrator) to be the collaborate to obtain all the status of collections for both HVAC (JCI) and the Fire Alarm Protection (SimplexGrinnell) for the Houston District.

Approximately mid to fall of 2016, Rochelle called me very upset.  She indicated that Valerie was bullying and harassing her in regards to not performing her AR collections to high standards; she was responsible for the Houston District Fire Alarm Protection collections.  Rochelle even went as far as stating Valerie was like a slave driver and making her feel like a slave.    This was not the first time that Rochelle had contacted me stating she felt like she was being picked on or being bullied.  I asked Rochelle if she had contacted Human Resources and she indicated no.  That she was asking for it to be addressed through the appropriate protocol procedures.  So with that said I told her I would contact Jason Gorak and let him know of this situation.  As always, we also discussed about the push back and denial of correction of incorrect billings and/or credits correct that needed to be performed to resolve several of the outstanding AR invoices. We also discussed the continuous billings that generated knowing that they were not to the customers needs just to drive the necessary numbers for the district.  We discussed again, for her to continue her duties; pursue and push the various department Managers to get the necessary backup data, corrections or credits from the numerous outstanding invoices.  To note the accounts of status of corrections, responsible party, etc. on the AR system.

Upon the end of Rochelle's phone call, I immediately called and talked to Jason Gorak.  I informed Jason of the current situation and other conversations that I had with Rochelle about the bullying and harassment.  We discussed that he did not feel that her performance was up to par and advised that this determination was coming from Valerie primarily.  I reminded him of the circumstances of her performance was also reliant on the cooperation of the Department Managers for correct billings, corrections and approval of credits.  That he and I had prior conversations on this as well.  Jason was very surprised by the concerns and statements from Rochelle.  He indicated he would talk to Valerie and get her side and address any appropriate actions that needed to be to avoid further problems.  I explained to him that I was just wanting to ensure that we all were working towards and within the SimplexGrinnell/JCI guidelines of the processes and procedures.  As well we discussed that the Company drove the policies about harassment, integrity and so forth.  That currently due to all the changes so many employees were already feeling fearful and stressed; so we needed to encourage and work for positivity.

After my conversation, I let Rochelle know that I talked to Jason and he would be looking into the situation.

Within about 30 minutes after having my conversation with Jason Gorak, I received a call from Valerie.  She was very annoyed that I did not call her instead of Jason.  That I should always contact her first.  I explained to her that this was not the protocol as she did not report to me and this is was why I contacted Jason.  She proceed to tell me how Rochelle was not meeting her requirements for collections and so on.  I in turn reminder her as I stated I did Jason as well about the push back and lack of cooperation of corrections, credits and invoices being generated incorrectly even after repeatedly being addressed with necessary parties.  She seems to calm down upon this.  I felt the conversation ended with a bit of understand from her side as well as her hopefully understand the challenges that Rochelle was having.

Within a couple of weeks,  my area of Management was changed and Houston was no longer under my responsibility.

A few months later, I got a call from the acting Area Business Manager, Jessica Williams; she wanted to know if I knew of this incident and so forth.  She stated that Rochelle had taken it to Human Resources.  She wanted to know if I would talk to Tess, the HR Administrator in regards to it.  I said I would.  I relayed the information to Tess that Rochelle had stated to me, that I addressed it with Jason.  He in turned stated he would address with Valerie.  Due to the fact that I was no longer her Manager, I was not aware that the circumstances had not improved.

I do not recall the particular period of time, but I received another call from Jessica Williams asking if a different Human Resource personnel could call and discuss the situation again, particularly the statement of being treated like a slave.   From what I understand Tess, the prior HR Administrator did not complete the investigation.   For some reason, I think this was shortly after I was laid off in 2019.

Elizabeth Boswell

Former employee of JCI/SimplexGrinnell

# TIME FRAME OF RETALIATION

October 9, 2019
Uploaded 10/9/2019 3:00 AM by Reporting Party- Rochelle Johnson
<u>HR letter.docx</u>

After uploading my grievance to the ethical line, I was retaliated against five days thereafter by receiving an unfavorable performance review on October 14-2019. The review stated that I Inconsistently Meet Expectations.

January 2020
In January of 2020, (with approval from Valerie Lira), I had a meeting with Chad Stein, (manager over the CSR sales team). I expressed my interest in wanting to learn more about the role and responsibilities associated with the Customer Service Representative position. I was looking to change my role in JCI when and if the opportunity presented itself. Per my conversation with Chad Stein, he stated that I would be a perfect person for that position due to my excellent customer service skills and collections experience. After my meeting with Mr. Stein, I was approached by Valerie Lira. She asked how my meeting went with Chad. I told her that Chad said I would be a perfect person for the position if one becomes available based on the above-mentioned skills. Immediately after releasing those words, Valerie Lira's entire demeanor changed toward me. She went from being inquisitive to being very upset.

January 2020
On or around January 3, 2020, I called the Johnson Controls' Integrity Helpline for a status update to my existing claim.

January 15, 2020
On January 15, 2020, AFTER INQUIRING ABOUT THE CSR POSITION AND AFTER CALLING FOR A STATUS UPDATE CONCERNING MY GRIEVANCE, to my surprise, I was put on a "PIP" (Performance Improvement Plan) by Valerie Lira. I was completely caught off guard by this gesture given the fact that I had just disclosed the contents of my meeting with Chad Stein to Ms. Lira. Given her look of disapproval to Mr. Stein's positive appreciation for my advanced skill set, I find it very demeaning, distasteful, and retaliative to then put me on a PIP. I find this undo

Exhibit E



gesture not only undeserved, but invalid as well as tactically undermining. This is just another example of the type of sabotage I had to endure.


June 6, 2020,
On June 6, 2020, I received a request from Angela Forte of Human Resource to email her a copy of my grievance as she wanted to review my paperwork and come up with some type of resolve for my case. To this present date, I have never received any type of resolve from Angela Forte. My last call to Angela Forte was on June 19, 2020 when I informed her that I had been laid off. Angela Forte stated that she had not had a chance to review my paperwork but she would be getting back to me. This act of being shoveled around, ignored, and not taken seriously seemed all too familiar. Again, I was left without a voice.


June 19, 2020
Johnson Controls Fire Protection LP officially laid me off on June 19, 2020.
In my heart (given the vicious cycle of unwarranted events that I had become accustomed to), along with my persistent inquiries related to my grievance, I felt strongly unsettled and was anticipating being laid off by JCI courtesy of Ms. Lira. To add insult to injury, I was responsible for various aspects of training my replacement, D'shai Blackmon. Imagine that. I, Rochelle Johnson, the "incompetent" employee has the ability to help train the young lady who would be assuming my position.

2016 I spoke with my manager Elizabeth Boswell and she spoke with Jason Gorak (District Manager) I wanted to follow the appropriate protocol procedures according to Johnson Control hand book.

Once my manager Elizabet Boswell made Jason Gorak aware of the situation that occur in 2016 that's when the bullying, harassment and retaliation began.  Kicked off by Valerie Lira because I spoke up about a concern.

While waiting for some type of resolution from Jason Gorak the bullying continued and I could no longer tolerate the hostile work environment.  One night a co-worker and my new manager Jessica Williams convinced me to report the concerns to the HR dept.  I went to HR Angie Ready 2017 crying fluently about my concerns and after I finished reporting my concerns, Angie Ready stated that Houston, TX is not her territory and I would need to call Tesa Bolt Sr. Human Resources Generalist, HR Field Solutions in Dallas, TX.

 So, I called and scheduled a phone conference with Tesa Bolt HR Specialist in 2017.  And after my report, Tesa Bolt stated that she will start the investigation and will get back with me.  During the course of our conversations she stated that the investigation takes a long time to complete.  As of yet, Tesa Bolt HR Specialist has not addressed my issues or concerns.   Now, it's 2018 and my concerns have not been addressed.  So, I called the ethical line for help!



**U.S. Equal Employment Opportunity Commission**
**Houston District Office**    *Mickey Leland Building*
*1919 Smith Street, 7th Floor*
*Houston,TX,77002*
*(346) 327-7748*
*TTY (800) 669-6820*
*Fax: (713) 651-4902*

## AGREEMENT TO MEDIATE

*CHARGE NUMBER: 460-2020-04742*
*FEPA NUMBER:*

*Charging Party: Mrs. Rochelle D Johnson*
*Respondent: JOHNSON CONTROLS FIRE PROTECTION LP*

*This is an agreement by the above parties to participate in mediation in the above referenced charge. The parties understand that mediation is a voluntary process, which may be terminated at any time. The parties and, if they desire, their representatives and/or attorneys, are invited to attend a mediation session. No one else may attend without the permission of the parties and the consent of the mediator(s).*

*The mediator(s) will not function as the representative of either party. However, the mediator(s) may assist the parties in crafting a settlement agreement. Each party acknowledges being advised to seek independent legal review prior to signing any settlement agreement. The parties acknowledge that they have received a copy of the Mediation Fact Sheet. The parties acknowledge that the mediator(s) possesses the discretion to terminate the mediation at any time if an impasse occurs or either party or the mediator deems the case inappropriate for mediation.*

*The parties acknowledge that participation in the scheduled mediation does not constitute an admission by either party of any wrongdoing or of a violation of the laws enforced by EEOC. Furthermore, the Charging Party acknowledges that participation in the scheduled mediation by the Respondent does not commit the Respondent to providing a monetary resolution of the matter.*

*The parties recognize that mediation is a confidential process and agree to abide by the terms of the attached Confidentiality Agreement. The parties acknowledge that if a settlement is reached as a result of the mediation, the assigned mediator(s) is required to report to EEOC any benefits received. This information is reported only for purposes of providing aggregate data to the EEOC for mediation program evaluation purposes, and the individual terms of the agreement will not be disclosed to the public.*

*Signed digitally by Rochelle Johnson*           *11-10-2020 07:29 AM EST*

*Charging Party*                                                          *Date*
*Mrs. Rochelle D Johnson*
*Phone: (281) 858-7286/ Cell Phone:(832) 279-2284*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Houston District Office**

Mickey Leland Building
1919 Smith Street, 7th Floor
Houston, TX 77002
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Houston Direct Dial: (346) 327-7700
FAX (713) 651-4902
Website:  www.eeoc.gov

## NEGOTIATED SETTLEMENT AGREEMENT

1.　　The following Agreement refers to Charge Number *460-2020-04742*, on file with the Equal Employment Opportunity Commission (EEOC), under Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act of 1967 (ADEA), as amended; and the Americans with Disabilities Act of 1990 as amended.

2.　　The effective date of the Agreement shall be the date that the Agreement has been signed by the District Director of the Houston District Office of the EEOC.

3.　　In exchange for satisfactory fulfillment by *Johnson Controls Fire Protection LP* (Respondent) of the promises contained in paragraph four (4) of this Agreement, *Rochelle Johnson* (Charging Party) agrees:

　　　A.　　not to institute a lawsuit against *Johnson Controls Fire Protection LP* (Respondent) with respect to any matters related to the above-referenced charge;

　　　B.　　not to publicize or describe the terms of this Agreement and/or the existence of this Agreement;

　　　C.　　keep the filing and settlement of the above referenced charge confidential;

　　　D.　　to enter into a supplemental confidential general release of all claims against *Johnson Controls Fire Protection LP*, which supplemental agreement the EEOC has not participated in negotiating and to which the EEOC is not a party;

4.　　In exchange for the promises of *Rochelle Johnson* (Charging Party) contained in paragraph three (3) of this Agreement, *Johnson Controls Fire Protection LP* (Respondent) agrees to pay *Rochelle Johnson* (Charging Party) a monetary settlement totaling *$30,000* less applicable taxes and withholdings.

5.　　The Respondent will provide Title VII anti-discrimination training to all managers.

6.　　In view of the voluntary undertakings on the part of all parties concerned, it is hereby agreed that the contents of settlement discussions between all parties hereto shall be considered and treated as confidential; and that the discussion of settlement resolution shall not/will not be disclosed to any person not involved in the settlement process.

7.　　It is understood that this Agreement does not constitute an admission by the Respondent of any violation of Title VII of the Civil Rights Act of 1964, as amended; the Age

 Exhibit - G

Discrimination in Employment Act of 1967 (ADEA), as amended; and the Americans with Disabilities Act of 1990 as amended. All payments to the Charging Party in accordance with paragraph four (4) of this Agreement must be transmitted to the Charging Party within forty-five (45) days after Respondent receives a fully executed copy of this Agreement.

8.      The Respondent further agrees to provide written notice to the District Director of the Houston District Office or his designee within ten (10) days of satisfying the payment specified in paragraph four (4) of this Agreement. Unless otherwise indicated, the District Director's signature of this Agreement appoints the Investigator assigned to the above referenced charge, *Vernon M. Gardner Jr.,* as his designee to receive notice from the Respondent regarding compliance with this Agreement in accordance with paragraph four (4).

9.      The Respondent, *Johnson Controls Fire Protection LP* and Charging Party, *Rochelle Johnson* agree that this Agreement may be specifically enforced in U.S. District Court for the Southern District of Texas, Houston Division with respect to the matters contained in this charge (*460-2020-04742*) and may be used as evidence in a subsequent proceeding in which any of the parties allege a breach of this Agreement.

_____          _____
Respondent Representative             Date

_____          _____
Charging Party                        Date

10.     In reliance on the promises made in paragraphs three (3), four (4), five (5) six (6), seven (7) eight (8) and nine (9), the EEOC agrees to terminate the investigation which it has begun and not to use the above-referenced charge as the jurisdictional basis for a civil action under Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act of 1967 (ADEA), as amended; and the Americans with Disabilities Act of 1990 as amended.

11.     The EEOC does not waive or in any manner limit its right to seek relief in any other charge under investigation, including but not limited to, a charge filed by a member of the Commission against the Respondent, *Johnson Controls Fire Protection LP*

On Behalf of the Commission:

_____          _____
Rayford O. Irvin                      Date
District Director

Exhibit G



## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release (the "Agreement") is entered into between Rochelle Johnson ("Johnson"), and Johnson Controls, Inc. and Johnson Controls Fire Protection, LP (the "Company"). Johnson enters into this Agreement on behalf of herself, her spouse, her heirs, successors, assigns, executors, and representatives of any kind, if any. This Agreement is being entered into as a compromise to completely and finally resolve all claims, disputes and disagreements of any kind between Johnson and the Company. Therefore, in consideration of the terms, conditions and provisions contained in this Agreement, Johnson and the Company agree and acknowledge as follows:

1.      Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission, Charge 460-2020-04742 alleging that she was subject to discrimination on the basis of her age, race and alleging retaliation. The Company denies Johnson's allegations.

2.      Johnson acknowledges that the Company has denied and continues to deny the allegations; however, the parties desire to fully and finally end all potential litigation and disagreements of any kind between them. Nothing in this Agreement is intended to be, nor will be deemed to be, an admission of liability or wrongdoing by the Company or any of its agents for any purposed whatsoever.

3.      Subject to the conditions contained herein, the Company agrees to pay Johnson a total settlement of Thirty Thousand Dollars and No Cents ($30,000), less applicable taxes and withholdings.

4.      Johnson releases the Company, its parent, subsidiary, related and affiliated companies, and each of their past and present employees, directors, officers, agents, insurers, shareholders, members, partners, attorneys, fiduciaries, benefit plans, benefit plan administrators, successors, executors, assigns and representatives of any kind (referred to in this Agreement as "Released Parties") from any and all claims, causes of action, demands, suits,

1

Exhibit G 

agreements, promises, obligations and liabilities of any kind arising out of any matter, cause or event occurring on or before the date Johnson signs this Agreement. This release includes, but is not limited to, all claims, demands and liability arising out of or in connection with Johnson's employment with the Company and the termination of that employment. Johnson also releases and waives any claim or right to further wages, compensation, benefits, damages, penalties, attorneys' fees, costs or expenses of any kind from the Company or any of the other Released Parties. <u>Johnson fully understands and agrees that the general release of claims contained in this paragraph means she is forever giving up and waiving all claims and rights she may have, now or in the future against the Company or any of the other Released Parties based on any act or omission, events, or conduct that occurred on or before the date Johnson signs this Agreement.</u>

5.      Johnson fully understands and acknowledges that the general release contained in Paragraph 4 includes a release of any rights or claims Johnson may have under Title VII of the Civil Rights Act of 1964; the Age Discrimination in Employment Act (ADEA); the Americans with Disabilities Act (ADA), as amended; Executive Order 112446; the Rehabilitation Act of 1973; the Civil Rights Act of 1991; the Civil Rights Reconstruction Era Acts (including but not limited to 42 U.S.C. Sections 1981 and 1985); state and federal family and medical leave laws, including the Family Medical Leave Act (as amended); the Employee Retirement Income Security Act (ERISA); the Consolidated Omnibus Budget Reconciliation Act (COBRA); the Equal Pay Act; the Fair Labor Standards Act (FLSA); the National Labor Relations Act (NLRA); the Genetic Information Nondiscrimination Act (GINA); the Uniformed Services Employment and Reemployment Rights Act (USERRA); the Worker Adjustment and Retraining Notification (WARN) Act; Texas fair employment laws; Texas state wage and hour laws; Texas common law; any laws that provide for payment of attorneys' fees, costs, expenses, or liquidated, punitive, exemplary, or statutory damages; and any other federal, state or local laws or regulations of any kind.  The general release contained in this Agreement also includes, but is not limited to, a release by Johnson of any claims for wrongful termination, or any tort, breach of contract, violation of public policy,

defamation or invasion of privacy claims. This release also includes a release of any claims arising out of any Company policy, practice, contract or agreement. This release covers claims that Johnson knows about or may not know about. <u>This means that Johnson is giving up any and all rights she may have to sue the Company or the other Released Parties in any way based on events occurring on or prior to the date on which Johnson signs this Agreement.</u>  Notwithstanding the foregoing, this Agreement does not release any claims that cannot be released as a matter of law.

6.      Johnson acknowledges and agrees that this Agreement is executed by her in exchange for the payment of money to which she is not otherwise entitled by any contract, employment policy or otherwise.

7.      Johnson represents that she has not given, assigned, or sold any portion of any claim discussed in this Agreement to anyone else.  Johnson further represents that, to the best of her knowledge, no persons other than herself are entitled to assert any claims of any kind against the Company based on or arising out of Johnson's employment with the Company or the termination of her employment with the Company.

8.      Johnson releases and waives any right or claim to reinstatement or further employment with the Company or any of its parent, subsidiary, related or affiliated companies. Johnson acknowledges and agrees that her employment with the Company has ceased forever and will not be resumed again at any time in the future. Johnson further agrees that she will not seek employment or reemployment with the Company, or otherwise apply for a position (as an employee, temporary employee, independent contractor or otherwise) at any time in the future with the Company or any of the Released Parties. Johnson agrees and acknowledges that neither the Company nor any of the Released Parties will have any obligation to consider Johnson for employment or reemployment in the future. Johnson further agrees and recognizes that if she applies for employment at and/or is hired by the Company or any of the Company's parents,

subsidiaries, successors, or affiliates, this Agreement is sufficient and appropriate legal grounds for denying employment and/or terminating Johnson's employment.

9.      The Company acknowledges and agrees that it shall not interfere with any attempts by Johnson to obtain future employment and/or unemployment insurance benefits. Johnson understands and agrees that the Company does not make a determination of eligibility for unemployment insurance benefits and that such determination is within the jurisdiction of the state department of employment security.

10.     Johnson agrees that she has not filed or joined in any complaints, charges, lawsuits or proceedings of any kind that are currently pending against the Company or any of the other Released Parties. Johnson agrees that she will dismiss her pending EEOC charge.

11.     Nothing in this Agreement will be construed to prevent Johnson from: (a) testifying in response to a lawfully served subpoena; (b) filing a charge with the Equal Employment Opportunity Commission (EEOC) or filing any equivalent charge with a state or local fair employment agency; (c) cooperating with the EEOC or any local or state fair employment agency; (d) or filing an action to contest the validity of a release of age discrimination claims under the Age Discrimination in Employment Act. However, this Agreement prevents Johnson from obtaining any personal or monetary relief for herself based on such a filing, cooperation or testimony.  The Agreement also prohibits Johnson from obtaining any personal or monetary relief for her elf in any lawsuit in court or in any other proceeding of any kind instituted by Johnson (or by anyone else on Johnson's behalf) against the Company to the extent that such lawsuit or proceeding is based upon events or conduct occurring on or prior to the date on which Johnson signs this Agreement.  The Agreement does not void any right Johnson may have to receive a payment or award from a government agency (and not the Company) for information provided to the government agency.

12.     Johnson acknowledges that she is entering this Agreement voluntarily and she has been given up to twenty-one (21) days to consider whether to accept this Agreement.  If Johnson

Exhibit G

⑦

signs this Agreement at any time prior to the end of the twenty-one (21) day period, Johnson acknowledges and agrees that such early signing will be a knowing and voluntary waiver of Johnson's right to consider this Agreement for twenty-one (21) days and was due to Johnson's belief that she had ample time in which to consider and understand this Agreement and in which to review the Agreement with an attorney.

13.     Johnson further acknowledges that, for a period of seven (7) days following her signing this Agreement, Johnson may revoke this Agreement by delivering a written notice of revocation stating that Johnson wishes to revoke this Agreement to: Tammara M. Lovett, Johnson Controls, Inc. 5757 N. Green Bay Avenue, Milwaukee, Wisconsin 53209.  For such revocation to be effective, notice must be received no later than 5:00 p.m. CST on the eighth calendar day after the day Johnson signs this Agreement. If Johnson revokes this Agreement as it pertains to any ADEA claims, the Agreement shall otherwise remain in effect against all other claims.

14.     Johnson is hereby advised by the Company and the other Released Parties to consult with an attorney before signing this Agreement.

15.     Johnson acknowledges and agrees that the Company will not be obligated to make the payments described Section 2 (b) of this Agreement until forty-five (45) days after all of the following have occurred:

a.     The Company's counsel, Tammara M. Lovett, has received an original of this Agreement which has been signed and dated by Johnson; and

b.     The Company's counsel has received a valid, current, and complete IRS Form W-9 from Johnson.

16.     Johnson represents that she has not disclosed the facts, terms or amount of this Agreement to anyone other than the EEOC, her lawyer(s), spouse, or tax accountant/advisor(s) prior to signing this Agreement. Johnson understands and agrees that the existence of this Agreement, as well as all of the terms and conditions of this Agreement, are and will remain strictly confidential. Accordingly, Johnson agrees to keep the facts, terms, and amount of this Agreement

5

completely confidential, and that, except as required by law, Johnson will not disclose any information concerning this Agreement to anyone other than to the EEOC, her lawyer(s), her spouse, and her accountant/tax advisor(s), who will also be informed of and bound by this confidentiality clause.

17.     This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against any of the parties hereto. This Agreement is made and entered into in the State of Wisconsin, and shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Wisconsin without regard to its conflict of law provisions.

18.     This Agreement may be executed in one or more counterparts, and/or by electronic .pdf format or facsimile signature, each of which shall be deemed an original and all of which shall constitute one and the same Agreement.

19.     This is the whole Agreement between Johnson and the Company and the other Released Parties concerning the subject matter of this Agreement.  No promises or oral or written statements have been made to Johnson other than those in this Agreement. This Agreement may not be amended except in a writing that is signed by Johnson and the Company. If any portion of this Agreement is found to be unenforceable, the parties desire that all other portions that can be separated from it or appropriately limited in scope, shall remain fully valid and enforceable. Johnson understands that if she signs this Agreement, it will have a final and binding effect.

Exhibit G
(9)

JOHNSON ACKNOWLEDGES THAT SHE HAS READ THIS AGREEMENT, SHE UNDERSTANDS IT, SHE KNOWS IT CONTAINS A GENERAL RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS, SHE IS KNOWINGLY AND VOLUNTARILY ENTERING INTO IT, AND SHE UNDERSTANDS THAT SHE CAN MAKE NO FURTHER CLAIMS OF ANY KIND AGAINST THE COMPANY OR ANY OF THE OTHER RELEASED PARTIES BASED ON EVENTS OR CONDUCT OCCURRING ON OR BEFORE THE DATE SHE SIGNS THIS AGREEMENT.


_____            _____
ROCHELLE JOHNSON                          Date


JOHNSON CONTROLS, INC.

By:_____            _____
                                          Date
Title:_____

Exhibit H
(1)



Exhibit H
②



Established patterns for Discrimination

**The Patterns for Discrimination are found through the constant threatens that were displayed through verbal Harassment/bullying and retaliation from my manger. Her actions would suggest that she did not care for me.**
**The fear tacked were used in such away that I walked on egg shells with the thought of make any type of mistakes.  I worked every day knowing that I could be let go at any moment,**
**"My words are golden whatever I say Jason Gorak is going to listen because I got his ear."  This Is the fear that I lived with every day.**